108

**F I L E D**

JUL 1 4 2004

LARRY W. PROPES, CLERK
CHARLESTON, SC



UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| IUE-CWA, AFL-CIO, its Local 175, and | ) Case No. 3:01-4766-10 |
| JOHN LEVY, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| -vs- | ) |
| | ) |
| ENERSYS, INC., | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

---

### PLAINTIFFS' PETITION FOR ATTORNEYS' FEES AND COSTS

Class counsel petition the Court to approve an award of attorneys' fees of $500,000 and

costs and expenses of $300,000 to be paid from the common fund created by settlement of this

WARN Act case. That fund is $2.36 million. Based on the fund amount of $2.06 million net of

expenses, the $500,000 fee requested is 24%. As shown below, this is reasonable whether

measured as a percentage fee or as compared to a "lodestar" fee which would probably be higher.

It is also reasonable in light of the excellent recovery going directly to the class members.[1]

The WARN Act fund was created by the overall settlement of $7,750,000 for all litigation

between the Union IUE-CWA and the Company EnerSys. The other litigation besides the

---

[1] Each class member is receiving 340 hours of pay. As spelled out in Plaintiffs'
Memorandum in Support of Settlement, this is full recovery according to the view of Judge
Norton and a majority of other courts. The issue involves whether the 60-day backpay provision
means pay for 60 days or pay for the number work days falling within a 60-calendar-day period.
The 60-day notice period is 8 ½ weeks, and with a five-day work-week that amounts to 340 work
hours. That is what is being paid here and was paid in *Washington v. Aircap Industries, Inc.*, 866
F.Supp. 307 (D.S.C. 1994). Measured against the theoretical maximum of 60 work days (480
hours), the actual recovery is still 70%.

-1-

WARN Act case included an arbitration over a bonus plan (the "Gainsharing" arbitration); and an NLRB case. These cases are not directly within this Court's jurisdiction but the Court is being informed about the overall settlement because the class members in this case are also receiving payments under other parts of the settlement, and to enable the Court to review the WARN Act settlement in full context.[2]

## The litigation

This case was the culmination of a series of bitter battles between the plaintiff Union and the defendant Company. In order to achieve the results in this case, plaintiffs had to overcome strong resistance of defendant and its then counsel. That resistance, it is now clear, included concealing or falsifying evidence, firing union officials, and repeatedly violating federal labor laws.

The conflict dates back to the beginning of the Union's effort to organize the Sumter plant. After the Union won a contested election and was certified as collective bargaining representative in 1995, contentious negotiations resulted in a contract in 1998. A dispute arose almost immediately over calculation of "Gainsharing," a production bonus plan created by the

[1]    The overall settlement amount of $7,750,000 is being allocated as follows: Employees will receive direct payments totaling approximately $6.15 million. This consists of approximately $1.25 million from the Gainsharing arbitration, based on the arbitrator's award, approximately $1.55 million in this proposed WARN Act settlement, explained below, and approximately $3.35 million from the NLRB case, as approved by the NLRB. The additional money is $500,000 requested as fees and $300,000 requested as expenses in the WARN Act case, $300,000 for other expenses and fees incurred by IUE-CWA in the various controversies involving EnerSys, $400,000 for employer-side FICA payments, and $100,000 as reserve for unforeseen claims.

collective bargaining agreement. The dispute went to arbitration and eventually resulted in three

arbitration awards in the Union's favor, each of which was challenged by the Company and

upheld in this Court.[3]

Over the next several years, Company activities, especially repeated firing of Union

officials, led the Union to file numerous unfair labor practices with the National Labor Relations

Board. After investigation, the NLRB issued a broad complaint and began proceeding to trial.

The Company began mass layoffs in early 2001. After laying off recent hires,[4] the

Company had a bargaining unit workforce of approximately 400 regular employees as of mid-

April 2001. At that point, the Company began laying off the regular employees in waves over

the next six months. In November 2001 the few remaining employees were terminated as the

Sumter plant finally closed.

The mass layoffs and the plant closing gave rise to this WARN Act case. This case was

filed in December 2001 by the Union and John Levy, one of the bargaining unit employees. The

complaint alleged that the Company had failed to give the 60-day notices required by the WARN

---

[3] (1) *Yuasa, Inc. v. International Union*, C.A. No. 04:99-2003 (D.S.C. Nov. 23, 1999), *rev'd*, 224 F.3d 316 (4th Cir. 2000), *cert. denied*, 531 U.S. 1149 (2001), *on remand*, Order of Jan. 25, 2001 (Currie, J.).

(2) *EnerSys, Inc. v. International Union*, C.A. No. 3:01-3387-22 (D.S.C. Nov. 25, 2002)(Currie, J.)

(3) *EnerSys, Inc. v. International Union*, C.A. No. 3:02-622-22 (D.S.C. Oct. 23, 2003)(Currie, J.)

[4] Under the WARN Act, these recent hires did not count in determining when the mass layoff began, because the Act specifically excludes employees of less than 6 months (who are defined as "part-time employees") from being counted in determining WARN Act coverage. 29 U.S.C. § 2101(a).

-4-

Act to employees who were affected by either the mass layoffs or the plant closing.

However, to understand the WARN Act case, it is necessary to take note of some other events that took place in the months before the plant closing.

In late 2000, there was a management buyout of what was then Yuasa, Inc., and the new entity was renamed EnerSys, Inc. As 2001 began, the arbitration and litigation over the Gainsharing bonuses continued. As the year wore on, the Company fired several Union officials including the Local president.[5] The 1998 collective bargaining agreement expired. Then, while negotiations were ostensibly proceeding over a new contract , the Company suddenly announced in June 2001 that it was unilaterally withdrawing recognition of the Union as collective bargaining representative. The Company claimed it was doing so because it had received petitions from a majority of employees rejecting the Union as their representative. The withdrawal of recognition, which came to be at the heart of the WARN Act case, is now known to have been illegal because it was procured by the Company. After the Company maintained for two years that its withdrawal of Union recognition had been valid and could not even be examined in this Court, the Company on October 29, 2003 moved to amend its answer to admit that "the Union was the certified bargaining agent "at all material times, and that the withdrawal of recognition may have violated the National Labor Relations Act." ¶ 18 of proposed Amended Answer, attached to Motion for Permission to File amended Answer, Oct. 29, 2003.[6]

[5]    He was promptly ordered reinstated by the arbitrator, but the Company refused to comply until this Court upheld the award in 2002. *EnerSys, Inc. v. International Union,* C.A. No. 3:01-3387-22 (D.S.C. Nov. 25, 2002)(Currie, J.)

[6]    Indeed, the Company and its former attorneys are embroiled in litigation over who is to blame for the violations. *EnerSys Delaware, Inc. v. Jackson Lewis LLP,* C.A. No. 2004-CP-23-2685 (Greenville County Court of Common Pleas).

Once the WARN Act case began, it was fought with the same tenacity that characterized

the earlier conflicts described above. Eventually, plaintiffs were able in this case to uncover the

Company's plan and tactics. The result is the settlement now before the Court, which gives

excellent WARN Act relief to every eligible class member. Moreover, although the other

portions of the settlement are not directly within this Court's jurisdiction, it is noteworthy that the

overall settlement contains full relief for the Gainsharing arbitration claims, as well as excellent

relief on the claims that were before the NLRB. To a large extent, it was this WARN Act case

which made it possible to achieve these other aspects of the overall settlement.

The details of the WARN Act case will be spelled out in the section below entitled

"Novelty and difficulty of the questions involved." See pages 8-11. Suffice it to say here that

prevailing in this WARN Act case was a great challenge to plaintiffs' counsel.

Class counsel submit that the eventual outcome and the efforts it took to achieve that

outcome reflect fully support the request for fees and expenses, and satisfy the factors laid out by

the courts for measuring a reasonable award.

<u>No objection from class members</u>

First class mail notice has been sent to each class member. In addition, a newspaper ad

was placed in the Sumter Daily Item, and a mass meeting was held in Sumter attended by

approximately 200 former employees of EnerSys.

The opt-out and objection periods have now closed. No opt-outs or objections have been

received.

-5-

## Standards for awarding fees

The standards for awarding fees are well-known in the federal and state courts of this

state. They have been recently applied by Judge Blatt in *Cneral Wesleyan College v. W.R.*

*Grace & Co.*, C.A. No. 2:87-1860-8 (D.S.C. Dec. 21, 2001). That case awarded a percentage fee

based on common fund principles and supported by the factors set forth in the well-known case

of *Barber v. Kimbrell's Co.*, 577 F.2d 216 (4th Cir. 1978). The state courts follow similar

principles. *Baron Data Systems, Inc. v. Loter*, 297 S.C. 382, 377 S.E.2d 296 (1989), *Ex parte*

*Condon*, 354 S.C. 634, 583 S.E.2d 430 (2003).

There are two main types of attorneys' fee awards: (1) a statutory fee paid by one party to

the other party, usually based on a "lodestar," i.e., hours times rate; (2) a common fund fee paid

by a class of litigants to its own counsel, usually based on a percentage of the fund or recovery.[7]

This district has typically used the percentage method of calculating fees in common fund

cases. For example, the court stated a preference for this method when it awarded a percentage

fee from a common fund to Mr. Derfner and other lawyers in *Edmonds v. United*

_____

[7]     The two types can co-exist, as in this case and as has been approved by the U.S.
Supreme Court. This case was undertaken with the express understanding that there would be no
fee unless the suit succeeded in obtaining recovery for the class. Therefore, a fee based on a
percentage of the class recovery is appropriate. The fact that the defendant is paying the
plaintiffs to settle claims for statutory attorneys' fees as well as claims for damages does not
diminish the plaintiff class liability for fees; rather, it is in effect a credit toward the common
fund and toward the plaintiffs' obligation to pay class counsel. *See Venegas v. Mitchell*, 495
U.S. 82 (1990).

Similarly, Hon. Allison R. Lee of the Richland County Court of Common Pleas recently
approved a common fund percentage fee which included a portion that the defendants paid as a
statutory attorneys' fee. *Littlefield v. South Carolina Forestry Comm*, No. 96-CP-40-3447
(Richland Co. June 10, 2002).

-6-

States, 658 F.Supp. 1126, 1143 (D.S.C. 1987); see also Central Wesleyan College, supra. In the

latter case, Judge cited numerous recent cases doing the same, including decisions by other courts

in this circuit. See, e.g. Strang v. JHM Mortgage Sec. Ltd. Part., 890 F.Supp. 499, 502 (E.D. Va.

1995); Goldenberg v. Marriot PLP Corp., 33 F.Supp.2d 434, 438 (D. Md. 1998); Kidrick v.

ABC Television & Appliance Rental, Inc., 1999 WL 1027050 (N.D. W.Va. 1999) ("Where there

is a common fund in a class settlement, application of a percentage method to calculate an

attorney's fee award is now favored.").

In Central Wesleyan College, at pp. 7-8, the Court also considered what the percentage

should be. It reviewed cases and found that some courts used a range of 25% to 33 1/3% as

reasonable, while others ranged from 20% to 50%. The request for fees in this case is 24% of the

fund, which is at the low end of the typical range. Even if the expenses requested are added in,

the requested percentage is under 34%, still eminently reasonable. Finally, in this case the class

is getting full or nearly full recovery.

Twelve-factor test

In addition to ascertaining that the percentage is in the appropriate range, our Circuit has

set forth 12 specific factors guiding the determination of a reasonable fee. Barber v. Kimbrell's,

Inc., 577 F.2d 216, 226 (4th Cir. 1978), also applied in Central Wesleyan College:

1.  Time and labor required.
2.  Novelty and difficulty of the questions involved.
3.  Skill required to perform the legal services properly.
4.  Preclusion of other employment.
5.  Customary fee
6.  Contingent nature of the matter
7.  Time limitations imposed by the circumstances

8.  Amount involved and results obtained
9.  Experience, Reputation and ability of counsel
10.  Undesirability of the case
11.  Nature and length of the professional relationship
12.  Awards in similar cases

These will now be reviewed in turn.

1.  Time and labor required.

This case was intensively litigated for two years before settlement, and the settlement process has occupied a good part of a third year. The time was spent in legal analysis and memoranda, extensive factual investigation, discovery, motions (including ancillary proceedings to enforce a subpoena in the Southern District of New York), and dealing with administrative agency issues relating to the National Labor Relations Board.

As shown by the declarations of Armand Derfner and Stephen Koslow, attorneys' time in this case is over 1500 hours, with more to come. Derfner has nearly 900 hours, Koslow has over 400 hours, and Peter Wilborn has approximately 200. In addition, Guadalupe Diaz, a paralegal in office of Derfner, Altman & Wilborn, has spent substantial amounts of time talking to at least 150 class members.

2.  Novelty and difficulty of the questions involved.

The WARN Act has been called a seemingly straightforward but actually complex statute. In addition to predictable issues of law and fact, however, this case exhibited special difficulties.

The Company claimed it had satisfied the WARN Act because of certain notices it did

-8-

issue. In order to prevail, plaintiffs had to show that these notices did not comply or substantially comply with the Act. These were two main issues: (1) the timing of the Company's decision to close the plant, and (2) the Company's withdrawal of recognition of the Union as collective bargaining agent.

a)    The timing of the decision to close the plant.

The WARN Act requires that any notices of mass layoffs say whether the layoffs are temporary or permanent and whether a plant is being closed. Here, the Company did issue certain early mass layoff notices, which said the layoffs were temporary and the plant was not closing. The Company asserted that it was only later that it decided to close the plant, because of an unexpected sudden decline in the market for a certain line of batteries.

Plaintiffs alleged these notices were deceptive, and that the plant had been slated for shutdown at least since the management buyout in late 2000. The Union believed that the Company's stated reason of a sudden market decline was a pretext that would be contradicted by internal financial and other records of the Company and its investment banker and principal owner, the Wall Street firm of Morgan Stanley.

The Company resisted this discovery at every step. This Court was required to enter several Orders authorizing the discovery, denying reconsideration, and reiterating its directions.[8] Plaintiffs' discovery from Morgan Stanley was resisted both by EnerSys in this Court and by Morgan Stanley in New York. Only after this Court entered its Orders and a district judge in

---

[8]    This Court held that the merits of the Company's reason for closing the plant was not at issue in this case except insofar as it bore on the issues of timing and pretext.

-6-

New York entered an Order enforcing plaintiffs' subpoena could this discovery go forward.

Plaintiffs obtained thousands of pages of documents from the defendant and from Morgan

Stanley, and were able to depose key witnesses in Sumter, Reading, Pa. (EnerSys top officials),

and New York (the Morgan Stanley partner in charge of EnerSys).

Getting access to this information was not the only problem. Knowing what information

to get and how to get it, and then analyzing the information required plaintiffs' counsel to gain

familiarity with complex issues of corporate finance. In this effort, plaintiffs retained a CPA who

is financial analyst and expert in corporate management and finance. This expert helped counsel

prepare for all the depositions in New York City and Reading, Pennsylvania. The expert

consultant also attended all these depositions so that he could actively guide counsel in directing

follow-up questions throughout the course of each deposition.

b)      Withdrawal of Union recognition

The WARN Act provides that notice goes to the collective bargaining representative if

there is one, but otherwise to the individual employees. In June 2001, as noted above, the

Company withdrew recognition of the Union as collective bargaining agent. Thereafter, it

ignored the Union but sent some notices directly to employees and claimed this complied with

the WARN Act.

The plaintiffs alleged the withdrawal of recognition was illegal and sought discovery

about the circumstances. The Company resisted this discovery on the ground that this was an

NLRB unfair labor practice issue, that it was preempted by NLRB jurisdiction, and was

irrelevant in this WARN Act case.

-10-

Eventually this issue resulted in the NLRB's participating in this case over the discovery

issue, with the potential for an interlocutory appeal over the discovery issues. The NLRB's

involvement led to complex negotiations and orders relating to the permissible scope of

discovery.

Even after this Court entered its Orders compelling discovery on the withdrawal of

recognition, the Company kept resisting. It was only after repeated motions and an emergency

hearing and Order by this Court that plaintiffs were able to uncover the secret Company

operatives and learn the truth. At that point the Company moved to amend its answer to admit

that the withdrawal of recognition was invalid.

Issues like these made this case exceptionally difficult for plaintiffs. Plaintiffs believe

that pursuing these two matters — the internal Company records as an indicator of the timing of

the plant-closing decision, and the misconduct involved in the claimed withdrawal of recognition

— made it possible to achieve an excellent settlement of the WARN Act as well as the other

disputes. Plaintiffs also believe that the WARN Act case was the linchpin that made it possible.

3.     Skill required to perform the legal services properly.

This case required expertise in many areas of the law, including the substantive issues

under the WARN Act, administrative law issues relating to the NLRB, and procedural expertise.

The discovery issues required great investigative skill. In addition to the lawyers, plaintiffs also

relied heavily on the services of an expert in corporate management and finance.[9] All these

---

[6]     The expenses in this case were large especially because of the need to retain the
services of the financial expert, who helped prepare for and attended all the depositions in New
York and Pennsylvania, as well as analyzing the thousands of pages of documents provided by

-11-

issues were inter-related and increased the need for expertise in the many areas involved.

Plaintiffs were opposed by a premier law firm of several hundred lawyers, among the most experienced in defending labor law claims. This defense was augmented by the resources of Wall Street giant Morgan Stanley, with its own attorneys. The defendant also retained a former General Counsel of the NLRB, with the firm of Kirkland & Ellis, to help it keep the issue of withdrawal of union recognition out of this case.

4.    Preclusion of other employment

Other employment was not precluded, but the intensity and time pressure of this litigation made it harder to pursue other major matters at the same time.

5.    Customary fee

As noted above, the customary fee in a common fund case ranges from 25% to 33 1/3% or higher. Here the fee is 24% of the fund, and even if expenses are combined with fees, the percentage is still under 34%.

6.    Contingent nature of the matter

For the firm of Derfner, Altman & Wilborn, this case was entirely contingent except that most of the expenses were borne by the Union. The firm has expended over 1000 hours with no expectation of compensation unless the case was successful.

the defendant and by Morgan Stanley.

7.    Time limitations imposed by the circumstances

See No. 4 above.

8.    Amount involved and results obtained

As noted, the WARN Act relief is full or nearly full relief for the class. There is no deduction for attorneys' fees or costs. The class has been defined as broadly as possible. It includes every employee who was actively working during the last six and one-half months of the plant and who was terminated for non-disciplinary reasons.

The total of the overall settlement is $7,750,000, which includes settling matters not before this Court (the arbitration award and the NLRB case).

The total amount allocated to the WARN Act is approximately $2,300,000. If this Court approves this request for fees and expenses, that means the amount going directly to class members for the WARN Act is an estimated $1.5 million. This is based on an average of $3700 for approximately 400 employees. It includes 100 cents on the dollar for the basic claim, added money for medical benefits, and pre-judgment interest.

While the other portions of the overall settlement are not before this Court, it is worth noting that every class member in this case is also benefitting from other portions of the overall settlement. The NLRB portion of the settlement will pay each employee $50+ for each month of employment by EnerSys and its predecessor companies. Thus, the total benefits under this settlement will exceed $10,000 for a ten-year employee, and will approach or exceed $20,000 for a 20-year employee.

As of early 2003, the Company had offered to settle all the cases for $3,000,000. This

-13-

offer apparently included $500,000 for the WARN Act. The actual settlement for the WARN

Act is therefore three times the earlier figure. In addition, the NLRB portion of the settlement is

more than twice the earlier proposal, and the Gainsharing amount is also substantially more than

the earlier proposal.

In addition to the monetary results, this case has revealed unconscionable tactics that are

often suspected in anti-Union campaigns but are rarely discovered. That is an important result

here, and vindicates the employees who were the victims of the violations.

9.    Experience, Reputation and ability of counsel

Both main counsel, Armand Derfner and Stephen Koslow, are recognized leaders of their

Bars, and have been for many years. Mr. Derfner has won cases in this Court, the Supreme Court

of the United States, the South Carolina Supreme Court, and other state and federal trial and

appellate courts. He has been recognized as an outstanding attorney by this Court in awarding

fees in *Grass Roots Leadership v. Beasley*, C.A. No. 3:950345-0 (D.S.C. July 30, 1997)(Perry,

J.). In 2002 he and three other lawyers were named Trial Lawyer of the Year by Trial Lawyers

for Public Justice, for work in a Mississippi higher education desegregation case, *Ayers v.

Fordice*.

Mr. Koslow is one of the most experienced labor lawyers in the country. He has had

extensive trial and appellate experience with the National Labor Relations Board, United States

Department of Justice, in private practice representing management, and now as staff counsel for

an International Union.

**10.    Undesirability of the case**

This case was contingent and it was on behalf of a Union in a state where unions are not popular.

**11.    Nature and length of the professional relationship**

Mr. Koslow is staff counsel for plaintiff IUE-CWA, which was but is no longer the union representative of the class members. Derfner, Altman & Wilborn had no relationship with the Union or the class before becoming involved in the IUE-CWA v. EnerSys litigation.

**12.    Awards in similar cases.**

Numerous cases all reflect that this request of 24% of a fund is at the low end of the appropriate range. Even adding the expense request brings the percentage up to less than 35%. If the fee were computed on a "lodestar" basis, it would likely produce a greater fee. In 1987, in the *Edmonds* Order, the Court noted that calculating an effective hourly rate for a complex class action "would require utilizing an hourly rate of $400-$450 per professional hour." *Edmonds v. United States*, 658 F.Supp. 1126, 1141 n.30 (D.S.C. 1987). Even if that 17-year old rate were used in this case, the total lodestar for the more than 1500 lawyer hours (with more to come) would be $600,000-675,000.[10]

## Conclusion

---

[10]    Derfner's Declaration indicates he has been approved by another federal court at approximately $400 per hour. Koslow's Declaration cites Washington, DC, standard rates for fee awards at a range of $550.

-15-

Petitioners submit that the requested amount of $500,000 for fees and $300,000 for costs and expenses is a reasonable amount, especially when it still leaves the class members with full or nearly full recovery.

Respectfully submitted,

Armand Derfner #502
D. Peters Wilborn, Jr. #7609
DERFNER, ALTMAN & WILBORN, LLC
40 Calhoun Street, Suite 410
Post Office Box 600
Charleston, SC 29402
(843) 723-9804

Stephen M. Koslow
Counsel, IUE-CWA, AFL-CIO
1275 K Street NW, Suite 600
Washington, DC 20005
(202) 513-6342

ATTORNEYS FOR PLAINTIFFS

Charleston, South Carolina
July 14 2004

-16-

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| IUE-CWA, AFL-CIO, its Local 175, and | ( | Case No.: 3:01-4766-10 |
| JOHN LEVY, | ( | |
| | ( | |
| Plaintiffs, | ( | |
| | ( | |
| -vs.- | ( | CERTIFICATE OF SERVICE |
| | ( | |
| ENERSYS, INC., | ( | |
| | ( | |
| Defendant. | ( | |

I hereby certify that the foregoing Plaintiffs' Petition for Attorneys' Fees and Costs has

been served upon the following counsel of record by placing same in the United States Mail,

postage prepaid, this _14th_ day of July, 2004, addressed to:

Vance J. Bettis, Esquire                    Christie Newman Barrett, Esquire
Gignilliat, Savitz & Bettis, L.L.P.         Assistant U.S. Attorney
900 Elmwood Avenue, Suite 100               Office of the U.S. Attorney
Columbia, SC 29201                          1441 Main Street, Suite 500
                                            Columbia, SC 29201
Paul R. Lewis, Esquire
Stevens & Lee                               Margery E. Lieber, Esquire, Assistant
620 Freedom Business Center                 General Counsel for Special Litigation
Suite 200                                   National Labor Relations Board
Post Office Box 62330                       1099 14th Street, NW
King of Prussia, PA 19406                   Washington, DC 20570

041finalfeepetition.july1304.wpd

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| IUE-CWA, AFL-CIO, its Local 175, and<br>JOHN LEVY, | ) Case No. 3:01-4766-10<br>)<br>) |
| Plaintiffs, | )<br>) |
| -vs.- | )<br>) |
| ENERSYS, INC., | )<br>) |
| Defendant. | )<br>) |

## DECLARATION OF STEPHEN KOSLOW
## IN SUPPORT OF PLAINTIFFS' PETITION FOR RECOVERY OF LITIGATION
## EXPENSES

1.   Pursuant to 28 U.S.C. § 1746, I make this declaration in support of plaintiffs'

petition for recovery of expenses incurred in the litigation of this case.

2.   I am in-house counsel with the International Union of Electronic, Electrical,

Salaried, Machine & Furniture Workers, AFL-CIO, now IUE-CWA, a division of the

Communications Workers of America, AFL-CIO. Along with the law firm of Derfner, Altman

& Wilborn, I am counsel to the plaintiffs in this case.

5.   The expenses listed on the attached spreadsheet, totaling $251,514.00, were all

incurred in, and were reasonable and necessary to the litigation of this case.

Executed at Washington, DC, on July 12, 2004.

_____
STEPHEN KOSLOW

**EXHIBIT A**

## IUE-CWA, ET AL. v. ENERSYS, INC.
### C.A. No. 3:01-4766-10
### IUE-CWA EXPENSES

| PROVIDER | DESCRIPTION | INVOICE BILLING DATE | AMOUNT |
|---|---|---|---|
| Jones, Day | Mediation Services | 04/15/2002 | 12510 |
| Jones, Day | Mediation Services | 05/15/2002 | 122 |
| Jones, Day | Mediation Services | 03/18/2002 | 1203 |
| Joseph Mayer | Legal | 04/30/2001 | 4243 |
| Joseph Mayer | Legal | 07/31/2001 | 1010 |
| Joseph Mayer | Legal | 12/21/2001 | 1970 |
| Joseph Mayer | Legal | 01/02/2003 | 1430 |
| Gene Leeb, CPA | Financial Expert | 11/11/2003 | 19080 |
| Gene Leeb, CPA | Financial Expert | 10/20/2003 | 11293 |
| Gene Leeb, CPA | Financial Expert | 09/23/2003 | 11160 |
| Gene Leeb, CPA | Financial Expert | 10/03/2003 | 14760 |
| Gene Leeb, CPA | Financial Expert | 09/05/2003 | 15840 |
| Gene Leeb, CPA | Financial Expert | 03/08/2003 | 2520 |
| Gene Leeb, CPA | Financial Expert | 02/03/2003 | 4140 |
| Gene Leeb, CPA | Financial Expert | 07/30/2003 | 1800 |
| Gene Leeb, CPA | Financial Expert | 08/15/2002 | 5235 |
| Gene Leeb, CPA | Financial Expert | 07/30/2002 | 480 |
| Gene Leeb, CPA | Financial Expert | 06/26/2002 | 2880 |
| Gene Leeb, CPA | Financial Expert | 05/24/2002 | 25980 |
| Gene Leeb, CPA | Financial Expert | 06/11/2002 | 9754 |
| Gene Leeb, CPA | Financial Expert | 04/27/2002 | 9500 |
| Gene Leeb, CPA | Financial Expert | 02/22/2003 | 14940 |
| Gene Leeb, CPA | Financial Expert | 11/01/2002 | 1080 |
| Gene Leeb, CPA | Financial Expert | 10/18/2002 | 2742 |
| Gene Leeb, CPA | Financial Expert | 07/30/2002 | 1800 |
| Gene Leeb, CPA | Financial Expert | 04/27/2002 | 9300 |
| Gene Leeb, CPA | Financial Expert | 11/25/2003 | 10539 |
| Gene Leeb, CPA | Financial Expert | 04/18/2002 | 12840 |
| Kennedy, Schwartz | Legal | 06/01/2000 | 15 |
| Kennedy, Schwartz | Legal | 05/01/2003 | 625 |
| Kennedy, Schwartz | Legal | 01/01/2003 | 577 |
| Kennedy, Schwartz | Legal | 08/01/2003 | 22 |
| Kennedy, Schwartz | Legal | 11/01/2003 | 332 |
| Fred Feinstein | Legal | 07/08/2003 | 1687 |
| Carmine Artone | Fingerprinting | 10/23/2003 | 154 |
| Cingular | Gaillard cell phone | 06/27/2003 | 37 |
| Sandford Lewis | Legal | 10/30/2003 | 1015 |
| Sandford Lewis | Legal | 06/30/2001 | 1125 |
| Discovery Copy | Copying | 09/03/2002 | 1208 |
| RBI | Ray Schwartz Reporting Dep. Transcript | 10/22/2003 | 1826 |
| RBI | Investigative Services | 09/05/2002 | 771 |
| RMCis | Financial Expert | 06/30/2002 | 900 |
| RMCis | Financial Expert | 05/31/2002 | 3000 |
| Feith & Zell | Legal | 08/02/2001 | 5425 |
| Feith & Zell | Legal | 06/30/2001 | 350 |
| Inn At Reading | S. Koslow's travel exp. | 11/05/2003 | 1222 |

| PROVIDER | DESCRIPTION | INVOICE BILLING DATE | AMOUNT |
|---|---|---|---|
| Inn At Reading | S.Koslow's travel exp. | 11/19/2003 | 1272 |
| Inn At Reading | Dep. Room | 11/11/2003 | 1855 |
| Inn At Reading | S.Koslow's travel exp. | 11/21/2003 | 504 |
| Fairfield Inn | S.Koslow's travel exp. | 10/31/2003 | 417 |
| Cingular | Gailliard cell phone | 01/27/2004 | 59 |
| Cingular | Gailliard cell phone | 12/27/2003 | 45 |
| William Want | Legal | 11/19/2003 | 2677 |
| The Sumter Item | Meeting Notice | 11/18/2003 | 248 |
| The Sumter Item | Meeting Notice | 11/18/2003 | 99 |
| Gallagher Reporting | Dep. Transcript | 01/05/2004 | 700 |
| Gallagher Reporting | Dep. Transcript | 01/05/2004 | 1297 |
| Gallagher Reporting | Dep. Transcript | 01/12/2004 | 464 |
| IUE-CWA | Copying | 11/07/01-07/07/04 | 8625 |
| Roger Doolittle | Legal | 12/01/2003 | 2044 |
| Sumter Item | Meeting Notice | 06/09/2004 | 111 |
| Cingular | Gailliard cell phone | 04/27/2004 | 280 |
| Cingular | Gailliard cell phone | 05/27/2004 | 299 |
| Cingular | Gailliard cell phone | 06/27/2004 | 79 |
| | | | 251,514.00 |

**LEEB ASSOCIATES INC**
November 10, 2003

Stephen Koslow
IUE-CWA
Re Enersys complaints
Via fax

Dear Stephen,

Here is our billing for the 3 weeks ended, Sat, November 8, 2003

| date | time | description |
|---|---|---|
| 10/20/03 | 1 | Miscellaneous |
| 10/21/03 | 2 | Gavant Q's review docs |
| 10/22/03 | 2 | Review Docs, internet research, discussions |
| 10/24/03 | 3 | Review Docs, Fry Dep |
| 10/25/03 | 2 | |
| 10/26/03 | 0 | |
| 10/27/03 | 0 | Drive to SC (n/c for time, 12 hrs) |
| 10/28/03 | 15 | Work on and meet w Stephen re Gavant dep |
| 10/29/03 | 10 | Deps |
| 10/30/03 | 10 | Deps |
| 10/31/03 | 0 | Drive Penn (nc for time 8 hrs) |
| 11/01/03 | 2 | Miscellaneous inc discuss w Stephen |
| 11/02/03 | 6 | |
| 11/03/03 | 8 | Meet w enersys re docs |
| 11/04/03 | 12 | Work on new docs from ehersys |
| 11/05/03 | 12 | Dep McManus Zuiderna |
| 11/06/03 | 13 | Dep Zuidema Gavant |
| 11/07/03 | 8 | Dep Gavant Fries |
| 11/08/03 | 0 | Drive Chicago 11 hrs n/c |

| Total | 106 | x$180/hr | $19,080 |
|---|---|---|---|

Expenses on trip to SC Penn — 3,398

Less 106x$60 deferred fee payment — (6,360)

Total fee requested at this time — $16,118

Mileage (2637 x .35) 922.95
Hotel SC 417.36
Per Diem 19 days @40 760.00
Hotel Penn 10/31 121.50
Hotel Penn less food chges 1149.38
Tolls 26.75

EXHIBIT
B

Box 351 • Westmont IL 60559 • Phone 630-984-5030

# LEEB ASSOCIATES INC

Monday, October 20, 2003

Stephen Koslow
IUE-CWA
Re Enersys complaints
Via fax

Dear Stephen,

Here is our billing for the 2 weeks ended, Sat, October 18, 2003

| date | time | description |
|---|---|---|
| 10/04/03 | 5 | Drive to DC (n/c ½ time) Meet w Stephen/Armand re Fry dep |
| 10/05/03 | 12 | Sort and read Morgan Stanley/Docs with Stephen re Fry dep |
| 10/06/03 | 10 | Sort and read Morgan Stanley/Docs re Fry dep |
| 10/07/03 | 7 | Drive NY (n/c ½ time) prepare fry |
| 10/08/03 | 9 | Depose Fry Drive to DC (n/c ½ time) |
| 10/09/03 | 2 | Work on DB re Fry/Gavant drive Chicago (n/c ½ time) |
| 10/14/03 | 1 | Misc re Fry exhibits |
| 10/15/03 | 1 | Misc re Fry |
| 10/16/03 | 2 | Misc re Fry |
| 10/17/03 | 0 | |
| 10/18/03 | 0 | |

Total    49    x$180/hr

Expenses on trip to Washington and NY for Fry Dep
Less 49x$60 deferred fee payment

Total fee requested at this time

| | |
|---|---|
| Mileage (1893 x .35) | 694.05 |
| Hotel Penn O..p | 442.84    77.97 + 71.42 |
| Hotel Washington | 898.65 |
| Meals Washington | 180.00 |
| Hotel NY | 923.96    313.56 |
| Meals NY | 166.16 |
| Tips | 20.00 |
| Tolls | 52.10 |

$8,820
-2,478
(2,940)
$8,35...

*(handwritten:)* 247 3,91 / $8,35... / $8,35_,91 / 1p'

*(handwritten:)* approved / 10/24(03)

Box 351 • Westmont IL 60559 • Phone 630)-964-5030

3/10/03 13:27    pg. 1/1

# LEEB ASSOCIATES INC

Friday, October 3, 2003

Stephen Koslow
IUE-CWA
Re Enersys complaints
Via Fax

Dear Stephen,

Here is our billing for the 2 weeks ended, Friday, October 3, 2003

| date | time | description |
| --- | --- | --- |
| 09/22/03 | 8 | Sort and read Morgan StanleyDocs |
| 09/23/03 | 9 | Sort and read Morgan StanleyDocs |
| 09/24/03 | 8 | Sort and read Morgan StanleyDoc |
| 09/25/03 | 0 | |
| 09/26/03 | 0 | |
| 09/27/03 | 12 | Sort and read Morgan StanleyDocs, exhibits |
| 09/28/03 | 8 | Sort and read Morgan StanleyDocs, exhibits |
| 9/29/03 | 9 | Sort and read Morgan StanleyDocs, exhibits |
| 9/30/03 | 7 | Sort and read Morgan StanleyDocs, exhibits |
| 10/1/03 | 9 | Sort and read Morgan StanleyDocs, exhibits |
| 10/2/03 | 9 | Sort and read Morgan StanleyDocs, exhibits |
| 10/3/03 | 5 | Sort and read Morgan StanleyDocs, exhibits |

Total for Gene          82      x $180/hr          $14,760

Less 82x$60 deferred payment          4,290

Total requested at this time          $9,840

*(handwritten)* $9,840 — Approved Pm 10/6/03

Box 351 • Westmont IL 60559 • Phone 630-964-5030

**LEEB ASSOCIATES INC**
Tuesday, September 23, 2003

Stephen Koslow
IUE-CWA
Re Enersys complaints
Via fax

Dear Stephen,

Here is our billing for the 2 weeks ended, Saturday September 20, 2003.

| date | time | description |
|---|---|---|
| 09/05/03 | 6 | Sort and read Morgan StanleyDocs |
| 09/06/03 | 4 | Sort and read Morgan StanleyDocs |
| 09/08/03 | 4 | Sort and read Morgan StanleyDocs |
| 09/09/03 | 6 | Sort and read Morgan StanleyDocs, Start exhibits |
| 09/10/03 | 9 | Exhibits |
| 09/12/03 | 7 | Sort and read Morgan StanleyDocs |
| 09/13/03 | 6 | Sort and read Morgan StanleyDocs |
| 09/15/03 | 10 | Sort and read Morgan StanleyDocs |
| 09/16/03 | 9 | Sort and read Morgan StanleyDocs |
| 09/17/03 | 9 | Exhibits, Subpoenas |
| 09/18/03 | 12 | Exhibits, Subpoenas |
| 09/20/03 | 8 | Sort and read Morgan StanleyDocs |

Total for Gene        93    x $180/hr

Less $560 deferred payment

Total requested at this time

*(handwritten:)*
$16,740
5,580
$11,160

*(handwritten annotations:)* approved  9/24/03  This the when Fed Ct case



Box 351 • Westmont IL 60559 • Phone 630-964-5030

# LEEB ASSOCIATES INC

Friday, September 5, 2003

Stephen Koslow
IUE-CWA
Re Enersys complaints
Via fax

Dear Stephen,

Here is our billing for the 3 weeks ended, Thursday September 4, 2003, Friday and Saturday of this week will be on next bill:

| date | time | description |
|---|---|---|
| 08/16/03 | 6 | Start to sort Morgan StanleyDocs |
| 08/19/03 | 4 | Start to sort Morgan StanleyDocs |
| 08/18/03 | 10 | Sort and read Morgan StanleyDocs |
| 08/20/03 | 9 | Sort and read Morgan StanleyDocs |
| 08/25/03 | 7 | Sort and read Morgan StanleyDocs |
| 08/27/03 | 9 | Sort and read Morgan StanleyDocs |
| 08/28/03 | 8 | Sort and read Morgan StanleyDocs, conference |
| 08/30/03 | 9 | Sort and read Morgan StanleyDocs |
| 09/10/03 | 5 | Sort and read Morgan StanleyDocs |
| 09/03/03 | 8 | Sort and read Morgan StanleyDocs, conference |
| 09/04/03 | 4 | Sort and read Morgan StanleyDocs, |

Total for Gene    88    x $180/hr    $15,840
Less 88x$60 deferred payment

Total requested at this time

5,280

$10,560

*Scott - phone or BHP - ask is Enersys - when cover it*

Box 351 • Westmont IL 60559 • Phone 630-964-5030

# LEEB ASSOCIATES INC

Saturday, March 8 2003

Stephen Koslow
IUE-CWA
Re Enersys complaints
Via fax

Dear Stephen,

Here is our billing for the 2 weeks ended March 8, 2003:

| date | time | description |
|------|------|-------------|
| 02/22/03 | 12 | Advice memo |
| 03/08/03 | 2 | email and internet research |

Total for Gene    14    x $180/hr                         $2,520

Less 14x$60 deferred payment                                840

Total requested at this time                             $1,680

*[handwritten note]*

Box 351 • Westmont IL 60559 • Phone 630-964-5030

**LEEB ASSOCIATES INC**

Saturday, February 22, 2003

Stephen Koslow
IUE-CWA
Re Enerys complaints
Via fax

Dear Stephen,

Here is our billing for the 3 weeks ended February 22, 2003

| date | time | description |
|------|------|-------------|
| 02/04/03 | 6 | Various internet research |
| 02/05/03 | 10 | Time line and MS deposition questions, Advice Memo, Cost example |
| 02/06/03 | 6 | Time line and MS deposition questions, Advice Memo, Cost example |
| 02/07/03 | 2 | Misc work and phone calls |
| 02/09/03 | 10 | Time line and MS deposition questions, Advice Memo, Cost example |
| 02/10/03 | 4 | Internet research, time line |
| 02/11/03 |  |  |
| 02/12/03 | 8 | MS dep, and time line various conversations, batteryman etc |
| 02/13/03 |  | whole week estimated low. |
| 02/14/03 |  |  |
| 02/17/03 |  |  |
| 02/18/03 | 8 | Advice memo |
| 02/19/03 | 4 | DD section |
| 02/20/03 | 4 | Advice memo |
| 02/21/03 | 9 | Advice memo |
| 02/22/03 | 12 | Advice memo |

Total for Gene                          83          x $180/hr          $14,940

Less 23x$60 deferred payment                                            4,980

Total requested at this time                                          $9,960

Box 351 • Westmont IL 60559 • Phone 630-964-5030

# LEEB ASSOCIATES INC

Monday, February 3, 2003

Stephen Koslow
IUE-CWA
Re Energys complaints
Via fax

Dear Stephen,

Here is our billing for the 2 weeks ended February 1, 2003

| date | time | description |
|---|---|---|
| 01/21/03 | 6 | Prep for conference |
| 01/22/03 | 6 | Conference w Armand & Steve Prep for day 2, Time line started |
| 01/23/03 | 3 | Conference w Armand & Steve |
| 01/24-25/03 | 5 | Internet research, various conversations |
| 01/26-31/03 | 4 | Various reading, conversations and research |

| Total for Gene | 23 | x $180/hr | $4,140 |
| Less 23x$60 deferred payment | | | 1,380 |
| Total requested at this time | | | $2,760 |

Box 351 • Westmont IL 60559 • Phone 63C·964-5030

**LEEB ASSOCIATES INC**
Friday, November 1, 2002

Stephen Koslow
IUE-CWA
Re Enersys complaints
Via fax

Dear Stephen,

Here is our billing for the 2 weeks ended Nov 1, 2002.

| date | time | description |
|---|---|---|
| 10/21/02 | 3 | Phone discussion with Stephen re letter to region. review documents |
| 10/22/02 | 3 | Phone discussion with Stephen re letter to region. review docs, write paragraph |

| Total for Gene | 6 x $180/hr | $1,080 |

Box 351 • Westmont IL 60559 • Phone 630-964-5030

Box 351 • Westmont IL 60558 • Phone 630-964-5030

| | | Requested at this time | | $2,742 |
|---|---|---|---|---|
| | | Livery in Chicago | | 90 |
| | | Gasoline | | 16 |
| | | Rental car | | 119 |
| | | Airfair | | 268 |
| | | Hotel | | 89 |
| | | Total for Gene | 12 x $180/hr | $2,160 |
| 10/10/02 | 10 | Conference with region | | |
| 10/09/02 | 2 | Pre-conference meeting with Peter & Steve | | |
| date | time | description | | |

Here is our billing for the 2 weeks ended October 18, 2002.

Dear Stephen,

Stephen Koslow
IUE-CWA
Re Enersys complains
Via fax

**LEEB ASSOCIATES INC**
Friday, October 18, 2002

Box 351 • Westmont IL 60558 • Phone 630-964-5030

# LEEB ASSOCIATES INC
Tuesday, July 30, 2002

Stephen Koslow
IUE-CWA
Re Enersys complaints
Via fax

Dear Stephen,

Here is our billing for the 2 weeks ended September 14, 2002.

| date | time | description |
|---|---|---|
| Various dates | 10 | various phone discussions with Stephen, Raj Mohan, Jane North and drafting of 9/12/02 letter to Region re minimum tasks necessary |

| | | | |
|---|---|---|---|
| Total for Gene | 10 | x $180/hr | $1,800 |

# LEEB ASSOCIATES INC

Thursday, August 15, 2002

Stephen Koslow
IUE-CWA
~~Re Enersys complaints~~
Via Fax

Dear Stephen,

Here is our billing for the 3 weeks ended August 17, 2002

| date | time | description |
|------|------|-------------|
| 08/07/02 | 1 | Review items sent by Stephen |
| 08/08/02 | 5 | Review and preparation for conference w Jane North |
| 08/09/02 | 3 | Conference w Jane North; discussions with Koslow |
| 08/11/02 | 3 | Preparation for conference w Raj Mohan |
| 08/12/02 | 1 | Preparation for conference w Raj Mohan |
| 8/13/02 | 8 | Conference w Raj Mohan/ Koslow & Mitchell |
| 8/14/02 | 2 | Conference w Raj Mohan/ Koslow |

| Total for Gene | 23 | x $180/hr | $4,140 |

**Travel expenses**

| | |
|---|---|
| Hotel | 528 |
| Travel* (1450 miles x 32¢) | 464 |
| Meals | 57 |
| Cash expenses, mostly tips | 46 |
| **Total expenses** | **$1,095** |

*(286 SW airfare, 130 cab DC, 90 livery Chicago= 506)

| Total requested at this time | $5,235 |

approved
8/21/02

LEEB ASSOCIATES INC
Tuesday, July 30, 2002

Stephen Koslow
IUE-CWA
Re Enersys complaints
Via fax

Dear Stephen,

Here is our billing for the 2 weeks ended July 27, 2002.

| date | time | description | |
|---|---|---|---|
| Various | 4 | research acquision of capacity through merger after 12/31/01 | |
| Total for Michelle | 4 | x $120/hr | $480 |

Scott - please do BAP's for these invoices -- one is for EnerSys NLRB & one for HBD - (case # 10-CA-33464). Thanks. Helen

Box 351 • Westmont IL 60559 • Phone 630-964-5030

Stephen Koslow
IUE-CWA
Re: EnerSys complaints
via email

Dear Stephen,

Here is our billing for the two weeks ended, June 22, 2002. There was no billing for the previous 2 weeks.

| date | Time | no chg | |
|---|---|---|---|
| 06/12/02 | 2 | | Revise subpoena |
| 05/13/02 | 6 | | Revise subpoena |
| 05/14/02 | 1 | | Revise subpoena |
| 05/17/02 | 1 | | prepare for phone conference |
| 05/18/02 | 3 | | prepare for phone conference |
| 05/18/02 | 2 | | Phone conference with Jasper |
| 05/19-21/02 | 1 | | various phone conversations |

Total Gene        16        16 x $180

Total requested at this time

Please disregard 1st fax

approved [signature] 6/26/02

$2,880

$2,880

Stephen Koslow
IUE-CWA
Re: EnerSys complaints
via email

Dear Stephen,

Here is our billing for the two weeks ended, May 24, 2002

| date | Time | no chg | |
|------|------|--------|---|
| 05/12/02 | 1 | | Administration |
| 05/13/02 | 12 | | Organize info, Lettered NLRB, direct Michelle, Look for BAAN expert, phone w Steve |
| 05/14/02 | 4 | 4 | Letter to NLRB, phone with Steve, Michelle |
| 05/15/02 | 14 | | Prepare schedule of financial info, various phone with Vince, Dave, Steve, Michelle |
| 05/16/02 | 8 | | Read various documents, Prepare schedule of financial info |
| 05/17/02 | 12 | | Analysis and preparation of main table, brainstorming w Michelle, various phone conversations |
| 05/18/02 | 3 | | Analysis and preparation of main table |
| 05/19/02 | 12 | | Write Letter, various |
| 05/20/02 | 10 | | Write letter |
| 05/21/02 | 9 | | Write letter |
| 05/22/02 | 12 | | Write letter |
| 05/23/02 | 11 | | Write letter |
| 05/24/02 | — | 2 | Administration |

| | Total Gene | 107 | 107 x $180 | $19,260 |
|---|---|---|---|---|

| date | | | |
|------|---|---|---|
| 13-May | 8 | | Ramp up |
| 14-May | 8 | | Catalog Note books |
| 15-May | 8 | | Prepare work sheet |
| 16-May | 8 | | Prepare work sheet |
| 17-May | 6 | | Council with Gene, Review fax from Vince |
| 18-May | 2 | | Various analyses |
| 20-May | 8 | 2 | Research electricity |
| 21-May | 8 | 2 | Electricity |
| 22-May | — | | |

| | Total Michelle | 56 | 56 x $120 | 6,720 |
|---|---|---|---|---|

Total requested at this time        25,980

approved
5/24/02

Stephen Koslow
IUE-CWA
Re: EnerSys complains
via email

Dear Stephen,

Here is our billing for the two weeks ended, May 11, 2002

| | |
|---|---|
| Gene Leeb, visit Kansas City, 4 hours @$180 | $ 720 |
| Travel expenses | 296 |
| Gene Leeb, Meetings with Region, preparation, 16 hours | 3,600 |
| Travel expenses | 878 |
| Gene Leeb, prepare letter for Region, 17 hours | 3,060 |
| Michelle Blazek, research BAAN,10 hrs @ $120 | 1,200 |
| Total requested at this time | 9,754 |

Gene

Stephen Koslow
IUE-CWA
Re: EnerSys complaints
via email

Dear Stephen,

Here is our billing for the two weeks ended, April 27, 2002

Review and analize documents, various phone and email communications, organize and prepare for trial, phone conferences with NLRB.

| | |
|---|---|
| Gene Leeb, 49 hours@$180 | $8,820 |
| Michelle Blazek 4 hrs @ $120 | 480 |
| Total requested at this time | $9,300 |

**LEEB ASSOCIATES INC**
Thursday, April 18, 2002

Stephen Koslow
IUE-CWA
Re: EnerSys complaints
via email

Dear Stephen,

Here is our billing for the two weeks ended, April 13, 2002

**Week ended April 6, 2002:** review documents, draft subpoena items; various phone and email communications.

| | |
|---|---|
| Gene Leeb, 36 hours@$180 | $6,480 |
| Michelle Blazek 8 hrs @ $120 | 960 |

**Week ended April 13, 2002:** review documents, final subpoena; prepare and participate in various conferences.

| | |
|---|---|
| Gene Leeb, 30 hours@$180 | 5,400 |

| | |
|---|---|
| Total requested at this time | <u>$12,840</u> |

approved
[signature]
4/18/02

Staff
charge to
Fraser/Energy
NLRB case

Box 351 ★ Westmont IL 60559 ★ Phone 630-964-5030

**From:** Peter Mitchell
**To:** Scott Sommers
**Date:** 10/20/03 9:26AM
**Subject:** Fwd: EnerSys

Please do a BAP for the Derfner law firm for a witness payment. Please print out and use my email as the authorization for the payment. The case is the WARN Act case number

**CC:** Stephen Koslow

# BILLS APPROVED FOR PAYMENT

COMMUNICATIONS WORKERS OF AMERICA
501 THIRD STREET, N.W.
WASHINGTON, D.C. 20001

| DISTRICT / DEPT. | IUE | DIST / DEPT CODE | 015 | DATE | October 20, 2003 |
|---|---|---|---|---|---|

ADDRESS  1275 K Street, NW, Suite 600

Washington, DC 20005

OFFICE / SERIAL

BAP NUMBER

| VENDOR NO. | VENDOR NAME | | CUSTOMER ACCOUNT NUMBER |
|---|---|---|---|
| V150786 | Derfner and Wilborn LLP | | |

DESCRIPTION  Professional Expenses 1275 K Street (Yuasa/Enersys WARN Act Case: 3:01.4766-10)

| INVOICE NUMBER | INVOICE DATE | DEPT NO. | ACCOUNT NUMBER | EMPLOYEE # | INVOICE AMOUNT |
|---|---|---|---|---|---|
| 102003 | 10/20/03 | 031 | 5702-150(110) | | 98.25 |
| INVOICE NUMBER | INVOICE DATE | DEPT NO. | ACCOUNT NUMBER | EMPLOYEE # | INVOICE AMOUNT |
| INVOICE NUMBER | INVOICE DATE | DEPT NO. | ACCOUNT NUMBER | EMPLOYEE # | INVOICE AMOUNT |
| INVOICE NUMBER | INVOICE DATE | DEPT NO. | ACCOUNT NUMBER | EMPLOYEE # | INVOICE AMOUNT |
| INVOICE NUMBER | INVOICE DATE | DEPT NO. | ACCOUNT NUMBER | EMPLOYEE # | INVOICE AMOUNT |
| INVOICE NUMBER | INVOICE DATE | DEPT NO. | ACCOUNT NUMBER | EMPLOYEE # | INVOICE AMOUNT |

These invoices have been verified and are in proper order for payment.

| | BAP TOTAL | 98.25 |
|---|---|---|

PREPARED BY  Scott Sommers

APPROVED BY

TITLE  Paralegal

DATE  October 20, 2003

FORM/CWA-86A

WHITE COPY - HQ    YELLOW COPY - DISTRICT    PINK COPY - ORIGINATOR